**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:   MICHELE McGRATH        :   Chapter 7
                                :
         Debtor.                :   Bky. No. 13-17865 ELF
                                :

# O R D E R

    **AND NOW, WHEREAS**:

A. The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on September 9, 2013.

B. In her Schedule C, the Debtor claimed as exempt her interest in the real property located at 405 Buse Street, Ridley Park, PA ("the Property") pursuant to 11 U.S.C. §522(b)(3)(B).

C. Section 522(b)(3)(B) permits a debtor to exempt

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

D. The Trustee has objected to the Debtor's claimed exemption on the ground that the Debtor's interest in the Property is not a tenancy by the entireties, but rather is a joint tenancy with right of survivorship ("the Trustee's Objection") (Doc. # 16).

E. A hearing on the Trustee's Objection was held and concluded on January 8, 2014.

F. Post-hearing memoranda were filed by the parties and have been considered by the court.

G. The following facts either are not disputed by the parties or are found by the court based on the uncontradicted testimony of the Debtor at the January 8, 2014 hearing:

(1) In 1995, the Debtor purchased the Property jointly with Robert McGrath ("Robert").

(2) In 1995, the Debtor and Robert were engaged, but not yet married.

(3) According to the most current deed for the Property, dated June 6, 2002 ("the 2002 Deed"), the Debtor and Robert took title to the Property in 1995 as

> ***Robert J. McGrath, Jr. and Michele Wilson also known as Michele McGrath as joint tenants with right of survivorship.***

(4) In 1997, approximately 2 years after purchasing the Property, the Debtor and Robert were married.

(5) In 2002, the Debtor and Robert refinanced the Property.

(6) In connection with the refinancing transaction, the Debtor and Robert executed and recorded a deed dated June 6, 2002, conveying the Property as follows:

> ***Robert J. McGrath, Jr. and Michele Wilson also known as Michele McGrath as joint tenants with right of survivorship***
>
> *[to]*
>
> ***Robert J. McGrath, Jr. and Michele McGrath, joint tenants with right of survivorship.***[1]

(7) The Deed also states:

> ***The purpose of this deed is to put the wife in title under her married name. This is a transfer between husband wife and is therefore exempt from realty transfer tax.***

---

[1] The Debtor testified that she and her husband intended to own the property jointly as husband and wife, i.e., as tenants by the entireties, and the continued reference to a joint tenancy was a scrivener's error by the title company.

H.  As a result of the 2002 Deed, the Debtor own the Property as tenants by the entireties.[2]

---

[2]     Under Pennsylvania law, there is a presumption that property, real or personal, transferred to two (2) persons who are husband and wife, is held by the grantees as tenants by the entireties:

> The placing of the property in both names, without more, creates an estate by the entireties. It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entirety: In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary.

In re Holmes' Estate, 200 A.2d 745 747 (Pa. 1964) (citations omitted); see also Ronald M. Friedman, 1 Ladner Pennsylvania Real Estate §8.04(b), at 8-16 (Geo. T. Bisel Co., Inc. 2013).

When the Debtor and Robert executed and recorded the 2002 Deed they were, in fact, married. Thus, the legal presumption of entireties ownership is applicable. That presumption may be overcome only by clear and convincing evidence of contrary intent. At bottom, however, "intention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by entireties, such intention will be given effect." Brenner v. Sukenik, 189 A.2d 246, 249 (Pa. 1963).

In objecting to the Debtor' claimed exemption, the Trustee contends that contrary intent sufficient to overcome the legal presumption of entireties ownership is found in, what she depicts as, the plain, unambiguous language of the 2002 Deed. The 2002 Deed refers to the grantees as "joint tenants," without stating either the words "husband and wife" or "entireties." Thus, the Trustee posits that, by its own terms, the 2002 Deed was intended to leave the owners as joint tenants. Further, because the Trustee finds the 2002 Deed unambiguous, she argues that no extrinsic evidence (in the form of the Debtor's testimony regarding the parties' intent in 2002) should be considered because it would modify the unambiguous deed.

The Trustee's argument hinges on the premise that the Deed is unambiguous on its face. Were that true, her argument that the legal presumption of tenancy by the entireties ownership has been overcome would have some force. However, I conclude that the 2002 Deed is ambiguous.

The provision that creates the ambiguity is in the paragraph that includes the recitation that the purpose of the deed "is to put the wife in title under her married name." Certainly, that statement, standing alone, might suggest the parties' only intent in executing the deed was to put the public on notice that the Debtor, as co-owner, now uses a different name, without changing the nature of the ownership estate created by the 1997 deed. However, that interpretation is belied by the next sentence of the Deed, which states that the deed constitutes a "transfer." The word "transfer" conflicts with the Trustee's interpretation of the 2002 Deed. If the sole purpose of the 2002 Deed only was to update the Debtor's name in the public record, there would be no "transfer." The word "transfer" suggests that some change of ownership was intended. That, combined with the reference to the Debtor's marital status is sufficient to create an ambiguity regarding the parties' intent.

(continued...)

I.  The Debtor's interest in the Property is properly claimed as exempt under 11 U.S.C. §522(b)(3)(B).

**AND**, it is therefore **ORDERED** that the Trustee's Objection is **OVERRULED**.

**Date: February 10, 2014**

**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE**

---

²(...continued)
Having determined that the 2002 Deed is ambiguous, I may consider extrinsic evidence regarding the parties' intent. The Trustee does not dispute that proposition.

After considering the evidence presented, including the Debtor's testimony, which I credit, regarding her and her husband's intent to own the Property as tenants by the entireties, as well as the circumstances surrounding the execution of the 2002 Deed, I conclude that the Deed was intended to effect a transfer and that the Trustee has not overcome, by clear and convincing evidence, the legal presumption that the transfer to the spouses created a tenancy by the entireties.

The Trustee makes one (1) final argument in support of her Objection. She suggests that acceptance of extrinsic evidence would render the 2002 Deed oral and unenforceable under the Statute of Frauds. See 33 P.S. §1. (She does not assert that the 2002 Deed runs afoul of the Statute of Frauds for any other reason). She then reasons that the unenforceability of the 2002 Deed would return the parties to the prior 1997 Deed by which, indisputably, the Debtor and Robert were "mere" joint tenants, rendering the Debtor ineligible to invoke the entireties exemption provided by 11 U.S.C. §522(b)(3)(B).

In making this argument, the Trustee makes a logical leap that is painfully flawed. The process of interpreting the Deed to determine whether the grantees received the property as joint tenants or tenants by the entireties obviously does not render a transfer that has been memorialized in writing into an oral transfer. Judicial interpretation of the meaning of an ambiguous term of a writing that otherwise satisfies the Statute of Frauds does not make the writing any less of a writing. See Batholomew v. Loreno, 49 D.&C. 3d 70, 74-75 (Phila. C.P. 1987). Therefore, I reject this last contention.